UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN MANUEL CAMACHO CABRERA,<br><br>                                          Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, SENIOR WARDEN OF OTAY MESA DETENTION CENTER, ET AL.,<br><br>                                          Respondents. | Case No.: 26cv863-LL-MSB<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

      Pending before the Court is Petitioner Juan Manuel Camacho Cabrera's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Also before the Court is Respondents' Response to Petition [ECF No. 4] and Petitioner's Traverse [ECF No. 3]. For the reasons set forth below, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus.

## I. BACKGROUND

Petitioner Juan Manuel Camacho Cabrera is a Venezuelan citizen who came to the United States in September 2023 to seek asylum. Pet. ¶¶ 1, 16. Petitioner arrived in the United States at the El Paso crossing and immediately surrendered to border officials who processed him for entry into the United States. *Id.* Petitioner was detained for three days, but then released on his own recognizance with a Notice to Appear in San Diego, California, on December 12, 2023. *Id.* ¶¶ 2, 62. In granting his release, the Department of Homeland Security ("DHS") determined that he posed little, if any risk of flight or danger to the community. *Id.* ¶ 62; *see also* Exh. A, Notice to Appear. Since Petitioner has been in the United States, he has fully complied with the government's orders and has no criminal history. *Id.* ¶ 64. The Notice to Appear dated November 7, 2023 and issued by DHS states that Petitioner is "subject to removal from the United States" pursuant to the "212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Exh. A at 2.

Petitioner has lived in the United States since his release, following the requirements placed upon him as an asylum seeker. *Id.* ¶ 3. He received his work authorization and has been fully employed since he was authorized to work. *Id.* Petitioner appeared for approximately "one dozen court appearances" in connection with his asylum case, when on August 18, 2025, he was arrested at his immigration court hearing in San Diego. *Id.* ¶ 4. He was detained and has remained at the Otay Mesa Detention facility since then. *Id.*

Petitioner states that:

> [R]e-detention without a pre-deprivation hearing violated his due process rights. Nearly two years after deciding to release Petitioner on his own recognizance, Respondents re-detained Petitioner with no notice, no explanation of the justification and no opportunity to contest his detention before a neutral adjudicator before he was taken into custody.

Pet. ¶ 82. On February 11, 2026, Petitioner filed the instant Petition, alleging that his re-detention without notice or a hearing violates the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 75-90. He seeks a writ of habeas corpus directing Respondents to order his immediate release. *Id.* at Prayer for Relief.

On February 19, 2026, Petitioner filed a Traverse in support of his Writ of Habeas Corpus on the basis that Respondents failed to file their Return by the court-ordered deadline. ECF No. 3. Respondents filed a late Return on February 21, 2026, that failed to address why their Return was late (four days beyond the Court-ordered deadline of February 17, 2026). ECF Nos. 2, 4. Instead, Respondents' argued that Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g), that he is an "arriving alien" and inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), and that his detention is not unconstitutionally prolonged. ECF No. 4.

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III. DISCUSSION

### a. Late-Filed Return

As an initial matter, the Court addresses that Respondents failed to abide by the Court-ordered deadline of February 17, 2026 to file their Return. Notwithstanding this failure, the Court will still rule on the Petition on its merits, but reminds Respondents that failure to do so in the future may result in a waiver of their arguments.

///

**b. Jurisdiction**

Respondents argue that this Court lacks jurisdiction under 8 U.S.C. § 1252(g). Response at 2–4. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that Petitioner's claims arise from DHS's decision to commence removal proceedings. Response at 3. The Court disagrees.

Section 1252(g) should be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *6 (9th Cir. Aug. 27, 2025) (quoting *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482, 487 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *7. Section 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998) (finding that the petitioners' objective was not to review the merits of their proceeding, but rather "to enforce their constitutional rights to due process in the context of those proceedings").

Here, Petitioner does not challenge the decision to commence removal proceedings or any act to adjudicate or execute a removal order. Rather, Petitioner is challenging his re-detention without notice or justification. Pet. ¶ 82. Petitioner is enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, No. 25-CV-2180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025). Therefore, § 1252(g) does not strip the Court of jurisdiction.

**c. Due Process**

Petitioner argues that his re-detention without a pre-deprivation hearing violated his due process rights. Pet. ¶ 82. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, No. 25-cv-5632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 2025 WL 2084921, at *3 (citing *Romero v. Kaiser*, No. 22-cv-20508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that as an "applicant for admission" under 8 U.S.C. § 1225 Petitioner is subject to mandatory detention and therefore his alleged statutory and constitutional violations fail. Response at 4-8. The Court disagrees. Petitioner was released on his own recognizance and has been living in the United States for the past two years. Pet. ¶¶ 2, 3, 62. Petitioner is not a newly arrived noncitizen seeking admission at the border, as Petitioner has been in the United States since September 2023. *Id.* ¶ 1. Upon arrival, he was determined to not be a danger to the community or a flight risk and has attended his court hearings. *Id.* ¶¶ 3, 4, 62. Petitioner is not merely an "applicant for

admission" at the border with minimal due process rights; Petitioner has a protected liberty interest in remaining out of custody. *See, e.g.*, *Pinchi*, 2025 WL 2084921, at *4 ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."); *Noori*, 2025 WL 2800149, at *10 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Matute v. Wofford*, No. 25-cv-1206-KES-SKO (HC), 2025 WL 2817795, at *5 (E.D. Cal. Oct. 3, 2025) (finding petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a finding that the Government's re-detention without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody after his initial release on his own recognizance. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects."

*Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with and providing for his family and continuing the asylum process. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner was re-detained without providing him a reason giving him an opportunity to be heard. Pet. ¶ 62. Since DHS's initial determination that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1760 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). Petitioner has no criminal record, has not been arrested or otherwise in criminal trouble, has work authorization, and has filed an asylum application. Pet. ¶¶ 3, 64, 72. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk. . . ." *Saravia*, 280 F. Supp. 3d at 1760. Respondents in their Response do not point to any material circumstances that have changed that would warrant Petitioner's re-detention without notice or a hearing. *See generally* Response. "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 2025 WL 2084921, at *5 (quoting *Singh v. Andrews*, No. 25-cv-801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Pinchi*, 2025 WL 2084921, at *5; *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps

1  toward doing so; but its interest in doing so without a hearing is low."). Respondents fail
2  to point to any burdens on the Government if it were to have provided proper notice,
3  reasoning, and a pre-deprivation hearing. *See generally* Response.

4  Therefore, because Respondents re-detained Petitioner without notice or a hearing
5  in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Alegria Palma*
6  *v. Larose et al.*, No. 25-cv-1942 BJC (MMP), slip op. 14 (S.D. Cal. Aug. 11, 2025)
7  (granting a TRO based on a procedural due process challenge to a revocation of parole
8  without a pre-deprivation hearing); *Navarro Sanchez*, 2025 WL 2770629, at *5 (granting
9  a writ of habeas corpus releasing petitioner from custody to the conditions of her
10 preexisting parole on due process grounds).
11 / / /
12 / / /
13 / / /
14 / / /
15 / / /
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of previous release on recognizance. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for his re-detention and a hearing before a neutral decision maker to determine whether detention is warranted. The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.[1] As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: February 23, 2026

Honorable Linda Lopez
United States District Judge

---

[1] This relief has been granted in similar matters. *See, e.g.*, *Matute*, 2025 WL 2817795, at *8; *Pinchi*, 2025 WL 2084921, at *5; *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1097 (E.D. Cal. 2025); *Martinez Hernandez v. Andrews*, No. 25-CV-1035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025).